## AFFIDAVIT

Your affiant, Paul Hursey, is a Special Agent with the Drug Enforcement Administration (DEA) and has been employed with DEA since August 1999. Your affiant is currently assigned to the DEA Shreveport Resident Office. Your affiant renders this affidavit in support of a criminal complaint against **Quwanda Lakesha FOREST**. Your affiant is aware of the following facts and circumstances.

1. On April 28, 2014, a Title III wire and electronic communications intercept was signed for telephone number (318) 265-2843 by Judge S. Maurice Hicks, Jr., in the Western District of Louisiana. That number was utilized by **Shannon JENKINS**.

2. On April 30, 2014, at approximately 4:42 p.m., **JENKINS** received a call from cellular telephone (318) 332-3850, a cellular telephone utilized by **Quincy Demon HOOVER** (session #536). **JENKINS** asked **HOOVER** when he was "leaving out" to which the **HOOVER** replied tomorrow night (May 1, 2014). **JENKINS** told **HOOVER** before he left **JENKINS** needed to get "those two books to read from you." **HOOVER** said that was possible and the two agreed they would talk the next day.

3. On April 30, 2014, at approximately 7:15 p.m., **JENKINS** received a second call from (318) 332-3850 (session #571). **JENKINS** told **HOOVER** that **JENKINS'** brother (**Carlos JENKINS**) wanted him to call **HOOVER** regarding "them boys up this way trying to get the grass cut." **HOOVER** told **JENKINS**

there was going to be a slight delay on that because he was "checking out man it wasn't the color...it needed to be man" and that **HOOVER** "wasn't trying to grab nothing man." **HOOVER** then made reference about the beginning of the week and a shipment that was supposed to be in. **HOOVER** repeated the comment about not trying to grab just anything and stated "'cause shit be coming through but it don't be what it supposed to be." **JENKINS** told **HOOVER** he would let his brother know what **HOOVER** said. Your affiant believes the two phone calls between **JENKINS** and **HOOVER** noted above was **JENKINS** ordering two kilograms of cocaine from **HOOVER** and the next day **HOOVER** told **JENKINS** there was going to be a delay because of the poor quality of the cocaine **HOOVER** had observed.

4. On May 4, 2014, at approximately 1:29 p.m., **JENKINS** received a call from **HOOVER**. **HOOVER** told **JENKINS** "they was telling me that they be at Clark's in about ten or fifteen minutes." **JENKINS** told **HOOVER** he was having his truck detailed but he would send his brother to deliver the money.

5. At approximately 1:31 p.m., **JENKINS** made an outgoing phone call to (318) 480-1395, a phone believed to be utilized by **JENKINS'** brother, **Carlos Cornelius JENKINS**. **Shannon JENKINS** told **Carlos JENKINS** "go back there and get that bread (U.S. currency) out that, out of my closet back there, it's in the hood of that jacket in there." **Carlos JENKINS** agreed and **Shannon JENKINS** told **Carlos JENKINS** "And take it up there to Clark's, take it up there to that store, give to uh...Q's cousin for me. It's a little bread I had owed

for that other batch." **Shannon JENKINS** and **Carlos JENKINS** further discuss the location of the money and the denominations. At approximately 1:34 p.m., **Shannon D'Lario JENKINS** called **HOOVER** and told **HOOVER** "My bro got it, he fixing to get up there, which store?" **HOOVER** replied they would be at Clark's and they would be in a white Expedition.

6. On May 4, 2014, at approximately 2:46 p.m., agents observed an unknown black female (later identified as **Quwanda Lakesha FOREST**) arrive at the Clark's Convenience Store located at 959 RWE Jones Street, Grambling, Louisiana. **FOREST** was driving a white 2008 Ford Expedition bearing Texas license plate number CVD9641, which was registered to **Quincy Demon HOOVER**, 730 West Davis Street, Dallas, Texas. **Quwanda Lakesha FOREST** is the girlfriend/paramour of **Quincy HOOVER**.

7. At approximately 2:52 p.m., agents observed **Carlos JENKINS** in the parking lot of Clark's parked parallel to the white Ford Expedition. Agents observed **Carlos JENKINS** exit his vehicle and walk to the opened driver's side door of the white Ford Expedition. Agents observed **Carlos JENKINS** reach into the front of his pants and extend his arms into the Ford Expedition toward **FOREST**. It appeared to agents that **Carlos JENKINS** was giving something to **FOREST**. At approximately 2:53 p.m., **JENKINS** received a call from **HOOVER**. **JENKINS** told **HOOVER** "Yeah um my bro just called me and said he been sitting up there and said he had to go and run and meet somebody he gotta go or something he said he been up around there since 2:28." **HOOVER**

replied "Yeah he was sitting, he was right there behind her the whole time" and further stated "yeah he handled it already".

8. Surveillance followed the white Expedition to the area of Highway 6 and Louisiana 3175 where surveillance was lost. Approximately 20 to 30 minutes later surveillance observed the white Ford Expedition arrive at 384 Main Street, Natchez, Louisiana.

9. On Sunday, May 11, 2014, **JENKINS** received an incoming call (Session #1781) from **HOOVER**. During the conversation, **HOOVER** told **JENKINS**, "They said it would be tonight when they make it." **JENKINS** replied, "Okay." Your affiant believes **HOOVER** was telling **JENKINS**, **HOOVER's** cocaine source of supply would arrive in the Houston, Texas on the night of May 11, 2014.

10. On May 12, 2014, at 10:46 a.m., **JENKINS** received an incoming text from **Quincy HOOVER**, (Session 2086) "We good hit in a min getting up." Agents determined, from a court ordered GPS ping on **Quincy HOOVER's** cellular telephone, **HOOVER** was in the vicinity of 19211 Opul Trails Court, in Richmond, Texas.

11. At 4:16 p.m., **HOOVER's** GPS ping showed **HOOVER** was in Cleveland, Texas traveling north on U.S. 59. At 4:30 p.m., the GPS ping showed **HOOVER** was in Livingston, Texas traveling east on U.S. 190. According to the GPS ping on **HOOVER's** phone, **HOOVER** traveled on U.S. 190 to Jasper, Texas.

12. At 10:11 p.m., **HOOVER**'s GPS ping showed **HOOVER** was traveling east on Louisiana highway 508 east of Bienville, Louisiana. At 10:23 p.m., **JENKINS** received the following text message from **HOOVER**, (Session 2260) "Coming up on you." At 10:52 p.m., **JENKINS** received an incoming call from **HOOVER** (Session 2273). **HOOVER** asked **JENKINS**, "is he there", meaning was **JENKINS**' brother **Carlos JENKINS** there. **JENKINS** replied he was. **HOOVER** requested to talk with **Carlos JENKINS**. **Shannon JENKINS** gave the phone to **Carlos JENKINS** and **HOOVER** told **Carlos JENKINS** he dropped off a "ten piece at Carlos' boy's house." **Carlos JENKINS** replied, "okay" then told **HOOVER** he would probably pick it up in the morning. **Carlos JENKINS** gave the phone back to **Shannon JENKINS** and **HOOVER** told **Shannon JENKINS**, "I'm coming up, I'm right here in Grambling."

13. Surveillance personnel observed a white Ford F-150 traveling north on RWE Jones Street in Grambling at 11:02 p.m. At the intersection of RWE Jones Road and Garr Road the vehicle turned west onto Garr Road, towards **JENKINS**' residence. At 11:14 p.m., **JENKINS** received an incoming call from **HOOVER** (Session 2275). **JENKINS** asked **HOOVER** "what's the number gonna be?" **HOOVER** told **JENKINS** "three one five." **JENKINS** replied "okay it's 94 dollars and five cents on the gas?" **HOOVER** replied "yeah." Based on the conversation your affiant believes **JENKINS** obtained three kilograms of cocaine from **HOOVER** at a price of $31,500.00 per kilogram making **JENKINS**

total bill with **HOOVER** $94,500.00.

14. At approximately 11:20 p.m., surveillance observed the white Ford F-150 a short distance from **JENKINS'** residence traveling east on Garr Road. The vehicle traveled to the Chevron gas station located at 959 RWE Jones Street, Grambling, Louisiana. Agents observed a black male exit the vehicle and enter the Chevron. Agents obtained the vehicle's Texas license plate number, BW32806. The vehicle, a white 2012 Ford F-150 truck, was registered to **Quincy D. HOOVER**, at 4423 Charriton, Houston, Texas 77039.

15. On May 24, 2014, agents of the DEA Task Force placed surveillance on **Rodney RAYMOND,** a drug/money courier for **HOOVER**, in Natchitoches, Louisiana, and agents also placed surveillance on **Quincy HOOVER** and **Mekendrick J. GRAYSON** in Houston, Texas. Surveillance units in Houston, Texas, were compromised by **GRAYSON** and **HOOVER**. Over **HOOVER's** Title III, **HOOVER** advised **GRAYSON** that he obtained the Louisiana license plate number of one of the agent's undercover vehicles. Agents believed at this time that **HOOVER** had a connection with law enforcement to have the undercover vehicle tag ran for the registered owner and address of the vehicle. Agents later confirmed that on May 27, 2014, the undercover vehicle plate that **HOOVER** obtained on May 24, 2014, was run through the Louisiana State Police Data Base by a Sheriff's Office employee in Louisiana to obtain registration information.

16. On May 28, 2014, a Title III wire and electronic communications

intercept extension was signed for telephone number (318) 548-5620 by Judge S. Maurice Hicks, Jr., in the Western District of Louisiana. That number was utilized by **Shannon D'Lario JENKINS**.

17. On June 4, 2014, **HOOVER** was stopped for a traffic stop in Natchitoches, Louisiana. Circumstances during the stop dictated that a search of the vehicle be conducted. **HOOVER** was arrested for possession of marijuana, resisting an officer, and obstruction of justice. **HOOVER's** vehicle was also seized for having a manufactured hidden compartment. The electronically controlled compartment was behind the back seat of a Dodge Charger and capable of holding approximately ten kilogram sized packages. **HOOVER** also had seven working cellular telephones in his possession. Agents learned after **HOOVER's** arrest, from **Quwanda FOREST** herself, that **FOREST's** cellular telephone was (318) 581-6535.

18. Agents of the Natchitoches Parish Multi-Jurisdictional Task Force obtained state search warrants for **HOOVER's** cellular telephones and downloaded several of the cellular telephones seized from **HOOVER**. (713) 647-1866 was one of **HOOVER's** cellular telephones that they downloaded. Agents learned by reviewing the download of (713) 647-1866, that there were text messages between **FOREST** (318) 581-6535 and **HOOVER** where, **FOREST** tells **HOOVER** the name of the person the undercover vehicle was registered to as well the city & parish where the vehicle was registered to. Agents believe that **FOREST** had a Sheriff's Office employee in Louisiana, run the undercover

tag and provided the information to **HOOVER**. Agents also learned that at one time **FOREST** worked for the Louisiana Department of Family Services.

19. On June 7, 2014, at approximately 9:47 p.m., (Session 10873) **HOOVER** called **JENKINS** from cellular telephone (318) 554-8300. **HOOVER** explained to **JENKINS** the circumstances surrounding his arrest and provided **JENKINS** with his new cellular telephone.

20. On June 12, 2014, agents were monitoring the Title III of **JENKINS**. There were a series of calls and a text message between **HOOVER** and **JENKINS**. Agents believe that **JENKINS** was supplied cocaine by **HOOVER** on that night.

21. On June 25, 2014, Western District of Louisiana United States Magistrate Judge Mark L. Hornsby issued a search warrant for 384 Main Street, Natchez, Louisiana. On July 1, 2014, at approximately 1:26 p.m., law enforcement personnel executed the search warrant at 384 Main Street. Upon entering the driveway law enforcement personnel observed **HOOVER** run into 384 Main Street from the front yard of the residence; **HOOVER** was apprehended by law enforcement inside the residence. Law enforcement could hear **HOOVER** flushing a toilet repeatedly as they were calling **HOOVER** out of his concealed location. **FOREST** was located outside the residence in the front yard. A search of the residence resulted in the seizure of a gallon ziploc bag full of suspected Hydrocodone and Xanex pills, two loaded handguns, suspected drug ledgers, and a plastic shopping bag containing an unknown

amount of U.S. currency. The handguns and the drug ledgers were located in **HOOVER** and **FOREST's** bedroom. Approximately seven pounds of marijuana of was located in a truck behind the residence.

22. Based on the above facts and circumstances, your affiant believes that sufficient probable cause exists for the arrest of **Quwanda Lakesha FOREST** based on violation of 21 USC 846 Conspiracy to Distribute Cocaine and Crack Cocaine.

*[signature]*
Special Agent Paul Hursey
Drug Enforcement Adminstration

Subscribed and sworn to before me this 2nd day of July, 2014.

*[signature]*
Mark L. Hornsby
United States Magistrate Judge